## UNITED STATES *v.* EUROPEAN TRADING CO.

**No. 4536.**—Invoices dated Hamm, Germany, February 17, 6, 1934. Certified February 20, 9, 1934. Entered at Seattle, Wash., April 5, March 26, 1934. Entry Nos. 633, 3524.

### Second Division, Appellate Term

(Decided on remand March 10, 1939)

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: This is an application for review of the decision and judgment of the trial court in which it was held that, under the Antidumping Act of 1921, the purchase prices of the involved merchandise are the invoiced prices, and the total cost of production is 24,153.19 reichsmarks, and that under the Tariff Act of 1930, the dutiable United States value of the first item in reappraisement 110259–A, viz, 100 rolls of 3 x 6″ 14 gauge 6′ breadth 200′ length, is the appraised value.

The question presented for our determination appears to be concisely stated in appellant's fourth assignment of errors, as follows:

In finding and holding that RM. 3,482.47 was deductible from the total cost to the manufacturer to make the actual cost of production under the antidumping act of 1921, and in not finding and holding to the contrary.

Appellant states in its brief that "The amount of the purchase price was not disputed, both sides being in accord that the purchase price was the invoice price."

According to the record the collector notified the importer that "The merchandise * * * has been appraised in accordance with law and a return made that the purchase price is less than the cost of production." In reappraisement 110259–A the purchase price was found to be $7,297.10 and the cost of production $8,286.64. In reappraisement 110260–A the purchase price was found to be $2,188.63 and the cost of production $2,475.77. This difference between the purchase price and the cost of production is occasioned by the inclusion in the cost of production of 3,482.47 reichsmarks, which the appraiser found was a rebate or bounty granted to the manufacturer If this amount is legally included in the cost of production then the dumping duty should be assessed, but if this amount is not legally included, then the cost of production and the purchase price is the same, and no dumping duty should be assessed.

The appraiser at Seattle, in testifying, stated that this one-half of 1 per centum represented a bounty. The special agent stated with reference thereto as follows:

Export allowance. On all shipments of wire netting to a foreign country the manufacturer or exporter may apply for and receive the customary export allowance amounting to ½ of 1 per centum, which has been effective since December 1, 1932.

\* \* \* \* \* \* \*

| | |
|---|---|
| Including an allowance for waste, a total of 148,190 kg of wire rods were purchased from Krupp, Essen. On the basis of the 1933 domestic price for wire rods amounting to RM 112.10 per ton of 1,000 kg, free Hamm, the actual cost of the instant raw material amounted to_____ | RM 16, 612. 09 |
| An export rebate amounting to RM 23.50 per ton of 1,000 kg was allowed to the Hamm factory by Krupp, Essen, as verified by me from the latter's invoice covering the details of the transaction. The total rebate obtained amounts to_____ | 3, 482. 47 |
| Net cost of the raw material (wire rods) to the manufacturer at Hamm_____ | RM 13, 129. 62 |

The trial court, in its opinion, stated as follows:

After a thorough examination of the record I find that the crux of the whole matter is whether or not this rebate referred to in the special agent's report should have been included instead of being deducted. * * *

Rebate or no rebate, the fact remains that these wire rods *cost* the manufacturer 13,129.62 reichsmarks, and not 16,612.09 reichsmarks, as contended by the Government, and it is actual *costs* that I am considering in order to arrive at the cost of production. * * *

So in the case at bar it is the duty of this court to find the cost of the wire rods used in the manufacture of the merchandise in question to the manufacturer. What was that cost? As shown by the special agent, it was not 16,612.09 reichs-

marks, but the actual cost of the wire rods to the manufacturer, or what he really paid therefor, viz, 13,129.62 reichsmarks. Therefore, I am of opinion that the special agent properly deducted this rebate, and that the appraiser was in error in including it in the cost of production.

As heretofore stated, the appraiser stated that he predicated his inclusion of the item of the export rebate amounting to 23.50 reichsmarks per ton of 1,000 kilograms in the cost of material and labor as a part of the cost of production on the theory that it was a bounty. If this item of export rebate is in fact a bounty or grant, then it would appear that this amount should have been levied, collected, and paid under the provisions of section 303 of the Tariff Act of 1930, "however the same be paid or bestowed." Irrespective, however, of whether or not this so-called export rebate was a bounty or grant in fact, we find from the record here that it was not actually included and paid as a part of the cost of production, and we therefore concur with the trial court in holding that the special agent properly deducted this rebate, and the appraiser was in error in including it in the cost of production.

Having concluded that this item of rebate was not and should not have been included in the cost of production, and since the cost of production exceeded the purchase price only by the inclusion of this item, it is clear that with this item eliminated from the cost of production the purchase price is not less than the cost of production, and no reason exists for levying dumping duties.

The record shows that there was no foreign value for this merchandise, since such or similar merchandise was not freely offered for sale in the principal markets of the country of exportation. The record also shows that the importer in this case was the exclusive purchaser of such or similar merchandise in the United States, and there is therefore no export value for the merchandise.

After thoroughly considering this record we find:

1. That the merchandise consists of wire fish trap netting exported from Germany and entered on March 26 and April 5, 1934.

2. That at the date of exportation of this merchandise to the United States there was no foreign or export value for the same.

3. That the purchase price and the cost of production of the involved merchandise were the same, and that the merchandise was not purchased at a price less than the cost of production, and is, therefore, not subject to the assessment of dumping duty under the provisions of the Antidumping Act of 1921.

4. That the proper dutiable value of the first item in reappraisement 110259–A is $691.34, as appraised.

The decision and judgment of the trial court is therefore affirmed. Judgment will be rendered accordingly.